IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONALD D. VINES,                :
                                :
                                :
         v.                     :     CIVIL ACTION NO. 21-CV-1792
                                :
SEAN MARLER, *et al.*,          :
                                :

MEMORANDUM

SCHMEHL, J.    /s/ JLS                                    JUNE 28 , 2022

Plaintiff, a former pre-trial detainee[1] at the Federal Detention Center ("FDC") in Philadelphia, brought this *pro se Bivens* action[2] pursuant to 42 U.S.C. § 1983, claiming that the Defendants, federal officers at the FDC, failed to protect him from being stabbed multiple times by another inmate. Named as Defendants are Sean Marler, identified by Plaintiff as the Warden at FDC, Jennifer Knox and Peter Lawrie, identified by Plaintiff as Associate Wardens at FDC, Alexis Wright, identified by Plaintiff as a Captain at FDC, John Doe, identified by Plaintiff as a Shift Commander at FDC, and K. Case, and L. Maxan, identified by Plaintiff as Detention Officers at FDC. Although Plaintiff does not allege in what capacities the Defendants are sued, the Court will assume that all Defendants are sued in their individual and official capacities.

---

[1] Plaintiff is no longer a pre-trial detainee, having since pled guilty in this Court to one count of attempted armed bank robbery and one count of using, carrying and brandishing a firearm during a crime of violence. Defendant was recently sentenced to a term of imprisonment of 156 months by U.S. District Judge Paul S. Diamond. ECF 18-cr-13.
[2] In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court established a direct cause of action under the Constitution against federal officials for the violation of constitutional rights.

1

Presently before the Court is the Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Because the 12(b)(6) motion requires the Court to consider exhibits outside of the pleadings, the Court will convert this motion to one for summary judgment under Fed. R. Civ. P. 56.[3] By Order dated December 10, 2021, the Court granted the Plaintiff's motion for appointment of counsel and referred this matter to the Court's Prisoner Civil Rights Attorney Panel. To date, no attorney has entered an appearance on behalf of Plaintiff. Therefore, it is now time for the Court to move this natter forward and rule on the pending motions. For the reasons that follow, the motion for summary judgment and the motion to dismiss under 12(B)(1) are granted.

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id. (citing Anderson, 477 U.S. at 248).

Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. See *Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to

---

[3] The Court advised Plaintiff of its plan to convert by Order filed on May 10, 2022 and mailed to Plaintiff on May 12, 2022. [ECF 27].

overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c).

Plaintiff alleges that on July 22, 2019, he was moved to the "6-South" Unit at the FDC. Compl. at ¶ 15. On that date, Plaintiff claims he was confined to a wheelchair because he suffers from diabetic neuropathy. *Id.* at ¶ 16. Plaintiff alleges that once he was moved to the "6-South" Unit, he requested from his Unit Manager that he be placed in his former cell (# 631) in order to allow him easier access to his meal trays and medications. *Id.* at ¶ 18. The Unit Manager advised Plaintiff he would be moved to cell 631 on July 23, 2019. *Id.* at ¶ 19. According to Plaintiff, when he advised the current inmate in cell 631 that Plaintiff would be moving in the next day, that inmate became angry and told Plaintiff that "there would be problems" and that Plaintiff "could get hurt

3

bad." *Id. at ¶ 21.* Plaintiff alleges that he advised the FDC Officer assigned to "6-South" Unit, Defendant L. Maxan, of the threat. *Id.* at ¶ 22. Plaintiff alleges that Defendant Maxan failed to take any actions "to neutralize the threat made upon the plaintiff." *Id.* at ¶ 23. Instead, according to Plaintiff, Defendant Maxan advised him that it was "almost shift change" and that Plaintiff should "speak with the next shift officer." *Id.* At 2:00 p.m., Defendant Maxan was replaced by Defendant Detention Officer, K. Case. *Id.* at ¶ 24. Plaintiff alleges that after he advised Defendant Case of the threat, Case did not take any action and instead told Plaintiff, "You're a grown man, you can handle it!" *Id.* at ¶ 25.

At approximately 6:55 p.m., Plaintiff was confronted by another inmate who, according to Plaintiff, was angry that Plaintiff had informed Defendant Case about the threats he had received from the inmate in cell 631. *Id.* at ¶ 26. Plaintiff alleges that he attempted to gain the attention of Defendant Case but was unsuccessful. *Id.* at ¶ 27. Plaintiff alleges that at this time, the inmate attacked Plaintiff with a home-made knife, stabbing him at least three times while other inmates tried to protect him from the attack. *Id.* at ¶ 28. FDC's Main Control Room Officer observed the attack on security camera and called for assistance to "6-South" Unit. *Id.* at ¶ 29.

Plaintiff alleges that at the time of the attack, Defendant Case was not at his assigned post. *Id.* at 30. Plaintiff alleges that Defendant John Doe was the supervisor of Defendant Case and failed to require that Defendant Case remain at his post. *Id.* at ¶¶ 31-32.

Plaintiff alleges that he was rushed to a local hospital where he was admitted and treated for serious stab wounds to his head, face, neck and shoulder areas. *Id.* at ¶¶ 34-

35. He claims that upon his return to FDC, he was not placed in the Infirmary but was placed in the "Special Housing Unit" where he was "subjected to conditions and treatment consistent with, and virtually identical to, those conditions subjected to inmates assigned to 'Punitive Segregation.'" *Id*. at ¶ 36.

Count One asserts a claim against Defendant Case for a violation of Plaintiff's due process rights under the Fourteenth Amendment. *Id.* at ¶¶ 40-44. Count Two asserts an identical claim against Defendant Maxan. *Id*. at ¶¶ 45-49. Count Three asserts an identical claim against Defendants Marler, Knox, Lawrie, Wright and John Doe. *Id*. at ¶¶ 50-54. In this Count, Plaintiff also claims that these Defendants "deprived the plaintiff of personal safety when, despite being fully aware of a pervasive risk of harm to inmates, in the form of assaults and stabbings, from other inmates at the FDC-PHL, demonstrated a deliberate indifference to that known pervasive risk of harm when they established and/or maintained a policy, practice or custom of not separating housing of inmates based upon statuses of pre-trial detainee, convicted, sentenced, transitory, length of sentence, severity of offense(s), or history of assaultive behavior." *Id.* at ¶ 53. Count Four alleges that these Defendants demonstrated a deliberate indifference to that known pervasive risk of harm when they established and/or maintained a policy, practice or custom of not requiring Detention Center Security Staff (such as Defendants K. Case and L. Maxan) to physically remain at their assigned post at all times, unless relieved by replacement security staff." *Id.* at ¶ 58.

Defendants argue that the case against them in their individual capacities must be dismissed pursuant to Rule 12(b)(6) for failure to exhaust administrative remedies.

As noted above, the Court will consider this argument under the summary judgment standard.

The Prison Litigation Reform Act ("PLRA") requires the exhaustion of administrative remedies for all actions concerning prison conditions brought under federal law. 42 U.S.C. § 1997e(a).[4] This "'exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Ross-Diaz v. Dow*, 683 Fed. Appx. 103, 105 (3d Cir. 2017) quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is a threshold requirement that district courts must consider. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018). Failure to exhaust is an affirmative defense that the defendant must plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Rinaldi*, 904 F.3d at 268.

Further, our Court of Appeals has held that the PLRA requires "proper" exhaustion, which means the inmate must follow the procedural requirements of the prison grievance system. *Spruill v. Gillis,* 372 F.3d 218, 227 (3d Cir.2004). If a prisoner fails to follow the procedural requirements, his claims are procedurally defaulted and precluded from federal court. *Id.* at 231.

---

[4] Specifically, this section states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Our Court of Appeals has held that the "or any other Federal law" language contained in § 1997e(a) encompasses *Bivens* actions such as the one at issue here. *Nyhuis v. Reno,* 204 F.3d 65, 68–69 (3d Cir.2000).

Finally, both the Supreme Court and our Court of Appeals have rejected judge-made exceptions to the PLRA. *See, e.g., Ross v. Blake*, 578 U.S. 632, 136 S. Ct. 1850, 1856-58, 195 L.Ed.2d 117 (2016)  (rejecting a "special circumstances" exception); *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000) (noting that the PLRA "completely precludes a futility exception").

The Federal Bureau of Prisons (which operates the FDC) has adopted a three-tiered administrative remedy procedure with respect to inmate complaints which is set forth at 28 C.F.R. § 542.10, *et seq.* As part of this grievance process, inmates should first present their complaints to staff, and staff are obliged to attempt to informally resolve any issues before an inmate files a formal request for an Administrative Remedy. *Id.* at § 542.13(a). At the second stage of this process, if an inmate is unable to informally resolve his complaint, the inmate may file a formal written complaint to the Warden, on the appropriate form within twenty (20) calendar days of the date on which the events which form the basis for the complaint took place. *Id.* at § 542.14(a). If the inmate's concern is not addressed to the inmate's satisfaction by the Warden's response, the inmate may then file an appeal to the Regional Director within twenty (20) calendar days. *Id.* at § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed to the General Counsel (Central Office) within thirty (30) calendar days from the date of the Regional Director's response. *Id.* The Regional Director then has thirty (30) calendar days to respond and the General Counsel has forty (40) calendar days to address the inmate's concern. *Id.* at § 542.18. Under these procedures, no administrative remedy appeal is considered to have been fully exhausted until decided by the Central Office. 28 C.F.R. §

7

542, *et seq.* Plaintiff does not contend that he was unaware of this three-tiered administrative procedure.

To support their contention that Plaintiff has failed to exhaust his administrative remedies, Defendants have submitted the affidavit of Jonathan Kerr, Esq. who avers that he is the Senior CLC Attorney for the Federal Bureau of Prisons Northeast Regional Office. (ECF 17-1). Specifically, Kerr avers, in pertinent part:

> 5. [Plaintiff] does not indicate that he exhausted the administrative remedy program prior to initiating suit, and indeed, he has not filed an administrative remedy about anything associated with the July 22, 2019, incident or any other content mentioned in the complaint.
>
> 6. [Plaintiff] does not bring the instant civil action under the Federal Tort Claims Act but did previously file a SF-95 with the agency presenting an administrative claim against the United States for personal injury.
>
> 7. A review of the BOP Content Manager Administrative Tort application reveals [Plaintiff], filed one (1) Administrative Tort Claim while incarcerated in the BOP. On March 19, 2020, [Plaintiff] filed Administrative Tort Claim Number TRT-NER-2020-05714 at the BOP Northeast Regional Office averring on July 22, 2019, he was attacked by inmate Eli Thomas, Reg. No.89606-079, and stabbed three times, requesting $3,000,000.00. He did not implicate any employee of the United States in any wrongdoing and did not mention that he had informed any staff member of a perceived threat. On March 9, 2021, the Regional Counsel denied the claim indicating there was no evidence staff were aware of any threat to his safety prior to the assault and there was no evidence he experienced a compensable loss as the result of negligence on the part of any Bureau of Prisons employee. The denial letter additionally noted he was provided appropriate medical care and treatment for his lacerations, and indicated "if you are dissatisfied with this decision, you may bring an action against the United States in an appropriate United States District Court within six (6) months," of March 9, 2021.

*Id.* at ¶¶ 5-7.

From these uncontested averments, it appears that Plaintiff did not even begin to exhaust his administrative remedies with respect to his constitutional claims brought in this action. For example, Plaintiff did not attempt to informally resolve the matter with FDC staff. Nor did Plaintiff file a formal written complaint with the Warden at FDC. Indeed, Plaintiff does not contend otherwise. Moreover, the fact the Plaintiff may have initiated an administrative proceeding for claims brought under the Federal Tort Claims Act has no bearing whatsoever on the exhaustion of his *Bivens* claims under the PLRA. "Because of the mandatory exhaustion procedures under both the PLRA and the FTCA, and the separate purposes of these procedures with respect to their different claims, courts have consistently held that fulfillment of one exhaustion requirement does not satisfy the other." *West v. Schultz,* 2014 WL 1668093, *9 (M.D.Pa. Apr. 24, 2014), citing *Lambert v. United States,* 198 Fed.Appx. 835, 840 (11th Cir.2006). Although it may be burdensome on an inmate, the law requires that the administrative procedures under both the PLRA and the FTCA be exhausted in order to bring *Bivens* and tort claims in Federal Court arising out of the same incident.

In any event, Plaintiff, Plaintiff insists in his Response that he exhausted his administrative remedies under the PLRA. ECF 18 at pp. 5-8. Plaintiff argues that during the 30-day period he was confined to the "Special Housing Unit," he did not have access to any administrative forms

or to anyone who could assist him in filing any type of written complaint with the FDC-PHL Administration. Plaintiff claims that as soon as he was discharged from the "Special Housing Unit" into "6-North Unit" he received assistance from an inmate in preparing "Administrative Remedy Forms BP-8 and BP-9." He further claims that on August 26, 2019, he handed his completed Forms to a "6-North Unit Counselor," N. Mansi. Plaintiff alleges that Mansi refused to give Plaintiff the part of the Forms entitled "Part C-Receipt." According to Plaintiff, Mansi instead told Plaintiff that he would be sent copy of the Receipt in the mail from the FDC-PHL Administrative Remedy Coordinator.

Plaintiff maintains that when he did not receive a copy of the Receipt after 30 days had passed, he submitted by mail on October 1, 2019, an Administrative Remedy Appeal Form (BP-10) to the Northeast Regional office of the Bureau of Prisons.

Plaintiff alleges that when he still had not received any response by November 4, 2019, he submitted by mail an Administrative Remedy Appeal Form (BP-11) to the Central Office of the Bureau of Prisons in Washington, DC. Plaintiff claims that he never received a response.

Plaintiff maintains that he was deliberately misled by Mansi to sit by idly as the time period for filing an administrative remedy expired. He claims that Mansi acted pursuant to an unwritten policy, practice or custom at the FDC not to provide inmates with receipts for their administrative remedy forms. Plaintiff has attached to his Response the unsworn affidavits of three

inmates at FDC, who attest that they too did not receive receipts from FDC prison officials for their administrative requests.

Plaintiff also has attached to his Response what he claims are exact copies of the submissions he made on August 26, 2019, October 1, 2019 and November 4, 2019. (ECF 18, pp. 10-16). He claims he has these copies because his typist provided him with exact duplicates of the original typed Forms.

In their Reply, the Defendants cite to another affidavit from Jonathan Kerr in which Kerr avers, in pertinent part:

> 3. [Plaintiff] indisputably bypassed any attempt at informal resolution and was non-compliant with 28 C.F.R. § 542.13. Plaintiff does not submit any evidence of an informal resolution attempt or an informal resolution form. In the informal resolution process, FDC Philadelphia Correctional Counselors assign tracking numbers prior to providing an inmate a copy of the Informal Resolution Form. There is no tracking number associated with [Plaintiff].
>
> 4. If informal resolution is unsuccessful, a unit team member (ordinarily the counselor) issues the inmate a BP-9 form, and the completed form is returned to the unit manager for provision to the Administrative Remedy clerk to be logged into SENTRY and the resultant Administrative Remedy Number is transcribed onto the bottom of the Administrative Remedy form. There is no remedy number or any other information transcribed on the purported submissions. The remedy forms Plaintiff attaches are blank and devoid of any evidence they were mailed or provided to any staff members at any of the three levels.
>
> 5. Once an Administrative Remedy has been logged into SENTRY by the Administrative Remedy clerk, a SENTRY receipt is automatically generated. The material receipt is the receipt from the SENTRY system. While the counselor is tasked with checking SENTRY and printing receipts, record of the logged remedy exists in SENTRY even if the counselor

> fails to print the receipt or fails to deliver it to the inmate (even when the remedy is rejected for not meeting a certain filing requirement). The counselor is unable to remove a logged remedy from the computerized database.
>
> 6. Plaintiff contends he submitted and successfully mailed a BP-10 to the Northeast Regional Office on October 1, 2019, and BP-11 to Central Office on November 4, 2019, but did not receive a receipt or a response. This is simply implausible. Had he mailed or submitted anything they would have been marked as received, uploaded into SENTRY, likely rejected (since he would have no evidence of a BP-9 submission), and he would receive a rejection notice from those separate entities with detailed instruction on how to properly submit. Again, irrespective of him receiving receipts, there would be a record of each submission at the region and Central Office in SENTRY when received at those independent offices. There is no record of him submitting or mailing any remedies, at any level. The SENTRY system does not reveal either of these independent offices that respectively receive prisoner appeals from throughout the region and the country, received any submission from Plaintiff.
>
> 7. The most telling sign that the purported submissions attached to Plaintiff's reply are fraudulent and never submitted is the alleged BP-10 submission is a copy for the Warden's Administrative Remedy File, and the alleged BP-11 is Central Office's copy of the BP-11. The presented copies are what is kept by the agency in the institution and Central Office file when a submission is received. The only scenario where an inmate would still have possession of those agency color copies is if the inmate never submitted the BP-10 or BP-11.
>
> 8. A review of SENTRY reveals that during the time period at issue FDC Philadelphia was processing remedies in accordance with policy, to include from inmates housed in the SHU, where Plaintiff avers remedies were unavailable. *See* Attachment 1.

(ECF 20-1 at ¶¶ 3-8). Kerr has attached copies of the applicable SENTRY records to his Second Declaration. (ECF 20-1 at pp. 5-7.) These records show that Plaintiff has made

20 administrative remedy requests while incarcerated at FDC. None of these requests pertain to the events giving rise to Plaintiff's *Bivens* claims.

There is indeed one exception to the mandatory exhaustion requirement: administrative remedies must be available to the prisoner. *Ross*, 136 S.Ct. at 1858 ("An inmate ... must exhaust available remedies, but need not exhaust unavailable ones."). The availability exception means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642. For example, a remedy is unavailable if "officers [are] unable or consistently unwilling to provide any relief to aggrieved inmates"; if "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44. A misleading instruction from a prison official may qualify as a "misrepresentation" under *Ross. Hardy v. Shaikh*, 959 F. 3d 578, 587 (3d Cir. 2020). "The availability of administrative remedies to a prisoner is a question of law." *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002). The inmate bears the burden of proving he was thwarted from exhausting his administrative remedies. to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation. *Hardy*, 959 F.3d at 588.

Plaintiff does not challenge any of the averments contained in the Second Kerr Declaration (ECF 20-1). From these unrefuted averments and the attachments thereto,

it is evident that Plaintiff failed to file any type of informal or formal grievance concerning the *Bivens* claims he raises in this action.  Nor has Plaintiff demonstrated that he was prevented from exhausting his administrative remedies under any of the three *Ross* exceptions. Based on the records attached to the Second Kerr Affidavit, Plaintiff clearly knew the proper way to request an administrative remedy at the FDC, but did not do so in this case. Accordingly, the Court will grant judgment in favor of the Defendants and against Plaintiff on Plaintiff's Bivens' claims against Defendants in their individual capacities.

Defendants next argue that the Court must dismiss Plaintiff's claims asserted against them in their official capacities for lack of subject matter jurisdiction. Under Rule 12(b)(1), a motion to dismiss for lack of subject matter jurisdiction may be raised at any time. *See Grupo Dataflux v. Atlas Global Group*, L.P., 541 U.S. 567, 571 (2004). *See also LibertyMut. Ins. Co. v. Ward TruckingCorp.*, 48 F.3d 742, 750 (3d Cir. 1995) ("Federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue sua sponte.") Rule 12(b)(1) challenges are either facial or factual attacks. *Kestelboym v. Chertoff*, 538 F. Supp. 2d 813, 815 (D.N.J. 2008). "A facial attack questions the sufficiency of the pleading," and "[i]n reviewing a facial attack, a trial court accepts the allegations in the complaint as true." *Id*. However, "when a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id. See also*, *Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc*, 227 F.3d 62, 69 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F. 2d

14

884, 891 (3d Cir. 1977). In evaluating a Rule 12(b)(1) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. *See also Carpet Group Int'l*, 227 F.3d at 69. "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. The plaintiff has the burden of proving that jurisdiction does in fact exist. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen*, 549 F.2d at 891).

The United States has sovereign immunity, including in matters involving tort claims against its agencies or employees sued in their official capacities. *Federal Deposit Insurance Corp. v. Meyer,* 510 U.S. 471, 478 (1994). An action brought against a federal official in his official capacity is effectively an action against the United States and is therefore barred by sovereign immunity. *See Brown v. General Services Administration,* 425 U.S. 820, 826 (1976). Therefore, Plaintiff's action against the Defendants in their official capacities as federal employees is barred by sovereign immunity and must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

An appropriate Order follows.